IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| TIMOTHY D. KULP, Individually and As Administrator of the Estate of Timothy M. Kulp, Deceased; and CAROL L. KULP, | CIVIL ACTION NO: 4:03-cv-01474-MM JUDGE MALCOLM MUIR |
| Plaintiffs,<br>vs. | |
| SONIA VERUETE, Individually and as a Lieutenant at Centre County Prison; SHANNON QUICK, Individually and as Counselor for Centre County Prison; JAMES E. SMITH, Individually and as Lieutenant at Center County Prison, TIMOTHY GALLU, Individually and as Counselor as Centre County Prison; CO DAVID C. KNEPP, CO ANDREWS, CO SHEARER, CO GATES and CO STEFANKO, Individually and as Correctional Officers at Centre County Prison; JOHN DOES NO. 1-10., | *ELECTRONICALLY FILED* |
| Defendants. | **JURY TRIAL DEMANDED** |

## BRIEF IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT

AND NOW, come defendants SONIA M. VERUETE, LIEUTENANT JAMES E. SMITH, C/O SCOTT L. STEFANKO, C/O DAVID C. KNEPP, C/O TERRY L. McCLELLAN, C/O WILMER S. ANDREWS, JR., ERIC R. GATES and MICHAEL SHEARER, by and through their attorneys, MEYER, DARRAGH, BUCKLER, BEBENEK & ECK, P.L.L.C., and file the within Brief in Support of their Motion for Summary Judgment, as follows:

## I. __PROCEDURAL HISTORY__

This case was initiated on August 25, 2003 by the filing of a Complaint alleging violations of plaintiff's Fourteenth Amendment rights pursuant to 42 U.S.C. § 1983 for alleged deliberate indifference arising out of Timothy M. Kulp's suicide at the Centre County Prison on August 27, 2001.  Following the filing of motions to dismiss by all defendants, the plaintiffs filed their First Amended Complaint on May 3, 2004.

On May 17, 2004, these moving defendants filed their Motion to Dismiss the First Amended Complaint.  Motions to dismiss were also filed by defendants Quick and Gallu. On May 26, 2004, the plaintiffs filed a Corrected First Amended Complaint identifying Correctional Officer McClellan as a defendant, because Officer McClellan was not previously named in the caption of the First Amended Complaint.  On June 18, 2004, Officer McClellan filed his motion to dismiss.

On July 1, 2004, Your Honor issued an order dismissing these moving defendants, as well as granting defendant Gallu's Motions to Dismiss.  On July 28, 2004, Your Honor granted Officer McClellan's Motion to Dismiss as well.  Plaintiff appealed to the Third Circuit on July 27, 2004.

On January 9, 2006, the Third Circuit reversed the dismissal of defendants Veruete, Quick, Smith, Gallu, Knepp, McClellan, Andrews, Shearer, Gates, and Stefanko, opining that "the Amended Complaint in this case contains numerous facts which, when viewed in their totality and supplemented by information obtained in discovery, might support an inference of liability on the part of some or all of the prison employees."  Third Circuit Opinion at p.10.  The Third Circuit opined:

It is premature to decide at this stage of the proceeding the full extent of

each person's knowledge and the entirety of his or her actions.  As we stated in <u>Colburn</u> I [p]laintiff is therefore entitled to a reasonable amount of discovery to help her make the necessary showing to prove her case.

Third Circuit Opinion at pp.10-11 (quoting <u>Colburn</u>, 838 F.2d at 670).

Plaintiffs have now had a full and complete opportunity to conduct discovery.  The "extent of each person's knowledge and the entirety of his or her actions" is now known. There is still no evidence upon which a reasonable jury could find that these defendants were deliberately indifferent to a strong likelihood that Mr. Kulp would commit suicide.

## II.  <u>STATEMENT OF FACTS</u>

These moving defendants rely upon the facts set forth in the Concise Statement of Uncontested Material Facts that is being filed contemporaneously with this Brief, and which are incorporated by reference as though fully set forth at length herein.

## III.  <u>QUESTIONS PRESENTED</u>

I.    ARE THE CENTRE COUNTY PRISON DEFENDANTS ENTITLED TO SUMMARY JUDGMENT BECAUSE THERE IS NO EVIDENCE OF RECORD THAT THERE WAS A STRONG LIKELIHOOD OF SUICIDE AND NO EVIDENCE THAT THESE JAIL OFFICIALS WERE DELIBERATELY INDIFFERENT TO ANY SUCH NEED?

<u>Suggested answer</u>: Yes.

## IV.  <u>SUMMARY OF THE ARGUMENT</u>

Following this Honorable Court's ruling on the Motions to Dismiss and the Third Circuit's ruling that plaintiffs should be permitted to conduct discovery to determine if they have viable claims, the only issue remaining is whether the facts developed through discovery support a claim that would require this case to be submitted to a jury.  As set forth in this Brief, they do not.

To prevail on this claim, plaintiffs must prove (1) the detainee had a particular vulnerability to suicide, (2) the custodial officer or officers knew or should have known of that vulnerability, and (3) those officers acted with reckless indifference to the detainee's particular vulnerability. Following the completion of discovery, there is no evidence that will support the imposition of liability as to any of these defendants.

Officer Knepp only conducted the initial suicide assessment screening of Mr. Kulp, using the preset questions on the commitment computer. Mr. Kulp told Officer Knepp nothing that would suggest that there was a strong likelihood he would commit suicide. For example, Mr. Kulp stated that he was not taking psychiatric medications, that he had never attempted suicide, and that he had no intention of hurting himself or others. The suicide screening did not generate a score requiring Mr. Kulp to be placed on suicide watch. This decision, in any event, could not have been made by Officer Knepp. Officer Knepp went above and beyond his obligations when he advised his supervisor, Lt. Veruete, that Mr. Kulp appeared upset. Under these facts, Officer Knepp acted appropriately, was unaware of any particular vulnerability to suicide, and was not deliberately indifferent.

Lt. Veruete also knew that the suicide risk assessment screening did not warrant placing Mr. Kulp on suicide watch. Lt. Veruete did, however, place him in a cell with a heightened level of observation instead of general population, and requested an evaluation by mental health professionals to occur within hours of Kulp's commitment. Psychologist Quick evaluated plaintiff for approximately three hours at which time Mr. Kulp denied having any interest in committing suicide. Ms. Quick did not believe that he was a suicide risk, and agreed with the housing and observation being employed by the prison.

Lt. Smith, the next supervisor on duty, did not know of any imminent risk of suicide,

because he was aware of the suicide prevention screening and the evaluation by Psychologist Quick.  He was not deliberately indifferent, as he maintained this heightened level of housing and observation, and contacted a prison counselor to speak with Mr. Kulp. Further, Mr. Kulp did not commit suicide on Lt. Smith's watch.

The remaining correctional officers, Andrews, Shearer, Gates, Stefanko, and McClellan, did not know of a strong risk of suicide, as Mr. Kulp had been evaluated by a psychologist and a counselor, neither of which believed he was suicidal, and was not placed on suicide watch.  Further, there is no evidence of any statements made by Kulp to these officers that would suggest an imminent risk of suicide.  The correctional officers kept an eye on Mr. Kulp, and importantly, checked him only 28 minutes before his suicide attempt, at which time he was acting normally.  Correctional Officers Andrews and Shearer were not even present at the time of the suicide.  Under these facts, these correctional officers did not know of an imminent risk of suicide, and were not deliberately indifferent.

The burden of proving punitive damages against these defendants is even higher. The facts of record provide no support for the imposition of punitive damages against them.

## V. <u>ARGUMENT</u>

### A.    STANDARD OF REVIEW

Under Fed.R.Civ.P. 56, a court may grant a motion for summary judgment if there exists no genuine issue of material fact and the moving party is entitled to judgment as a matter of law.  <u>See</u> Fed.R.Civ.P. 56.  In determining whether the entry of summary judgment is proper, a court is to consider "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any."  Fed.R.Civ.P. 56(c).

Summary judgment is proper against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and in which that party will bear the burden of proof at trial. Celotex Corp. v. Catrett, 477 U.S. 317, 106 S.Ct. 2548, 91 L.Ed.2d, 265 (1986). A moving party is entitled to summary judgment as a matter of law if the non-moving party fails to establish an essential element of his or her case due to the fact that such party has failed to present a genuine issue of material fact. Celotex, 477 U.S. at 325, 106 S.Ct. at 2554, 91 L.Ed.2d at 275. A moving party bears the burden of demonstrating the absence of a genuine issue of material fact. Taylor v. Phoenixville Sch. Dist., 184 F.3d 296, 305 (3d Cir. 1999). Once the moving party has satisfied this initial burden, the opposing party must establish that a genuine issue exists by supplying "specific facts which demonstrate that there exists a genuine issue for trial." Orson v. Miramax Film Corp, 79 F.3d 1358, 1366 (3d Cir. 1996).

Not every issue of fact will be sufficient to defeat a motion for summary judgment; issues of fact are only genuine "if the evidence is such that a reasonable jury could return a verdict for the non-moving party." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). Further, the non-moving party cannot rest upon mere allegations but must present actual evidence that creates a genuine issue of material fact. See Fed.R.Civ.P. 56(e); Anderson, 477 U.S. at 249, 106 S.Ct. 2505, 91 L.Ed 2d 202. The Court must draw all reasonable inferences in the non-moving party's favor, and must accept the party's evidence when considering the merits of the summary judgment motion. Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986); Pollock v. American Tel. & Tel. Long Lines, 794 F.2d 860, 864 (3d Cir. 1986). The party moving for summary judgment need only point out to the court

that there is an absence of evidence to support the non-moving party's claims; it need not support its motion with affidavits or similar materials that regulate the opposing party's claims.  Celotex Corp., supra.  Here, the plaintiffs have failed to produce, and cannot produce, evidence necessary to support their claims against these defendants.  Summary judgment is appropriate.

**B.      THE RECORD EVIDENCE IS INSUFFICIENT FOR A REASONABLE JURY TO FIND THE CENTRE COUNTY PRISON DEFENDANTS LIABLE FOR MR. KULP'S SUICIDE.**

A suicide of a pretrial detainee can support a recovery in a section 1983 action only under particularly egregious circumstances.  A plaintiff in a prison suicide case has the burden of establishing the following:  1) that the detainee had a particular vulnerability to suicide; 2) the custodial officer or officers knew or should have known of that vulnerability; 3) those officers acted with reckless indifference to the detainee's particular vulnerability.  Colburn v. Upper Darby Township, 946 F.2d 1017, 1023 (3d Cir. 1991).

This Honorable Court previously identified the salient elements of such claims by quoting Colburn as follows:

> The requirement of a "particular vulnerability to suicide" speaks to the degree of risk inherent in the detainee's condition.  As several of our sister circuits have recently pointed out, the requirement of "reckless or deliberate indifference" implies there must be "a strong likelihood, rather than a mere possibility, that self-inflicted harm will occur."
>
> Even where a strong likelihood of suicide exists, it must be shown that the custodial officials "knew or should have known" of that strong likelihood. . . [T]here can be no reckless or deliberate indifference to that risk unless there is something more culpable on the part of the officials than a negligent failure to recognize the high risk of suicide. . .

Court's opinion of December 12, 2003 dismissing Timothy Gallu at p.9 (citing Colburn, 946 F.2d at 1023)).  This Honorable Court continued,

The Court of Appeals also defined the terms "know" and "should have known."  The Court stated that "[c]ustodians have been found to 'know' of a particular vulnerability to suicide when they have actual knowledge of an obviously serious suicide threat, a history of suicide attempts, or a psychiatric diagnosis identifying suicidal propensities." [Colburn v. Upper Darby Township, 946 F.2d 1017, 1025 n.1 (3d Cir. 1991)] (citations omitted).  As for "should have known" it was described as a

> phrase of art with a meaning distinct from its usual meaning in the context of the law of torts.  It does not refer to a failure to note a risk that would be perceived with the use of ordinary prudence.  It connotes something more than a negligent failure to appreciate the risk of suicide presented by the particular detainee, though something less then subjective appreciation of that risk.  The "strong likelihood" of suicide must be "so obvious that a lay person would easily recognize the necessity for "preventative action."

Id. at pp.6-7 (citing Colburn, 946 F.2d at 1025).  Determining whether a jail official was recklessly indifferent requires evidence of something more culpable than mere negligence in failing to recognize a high risk of suicide.  See Colburn, 946 F.2d at 1024-25.  This Honorable Court correctly summarized the appropriate test as follows:

> The Court of Appeals made it abundantly clear that there must be a strong likelihood of suicide so obvious that a lay person would easily recognize the necessity for preventative action and a prison official cannot be held liable for mere negligence in failing to recognize the necessity for preventative care.

Id. at p.10.

Discovery is now complete.  There is no evidence upon which a reasonable jury could conclude that Mr. Kulp had a strong likelihood of suicide of which these defendants were aware or should have been aware.  Further, there is no evidence that any of these defendants were deliberately indifferent to any such risk.

1.    **There is no evidence that Correctional Officer David C. Knepp either knew or should have known of a strong likelihood of suicide, nor is there evidence that he was deliberately indifferent to a need for preventative action.**

Correctional Officer Knepp served only one role with respect to Mr. Kulp – he conducted the initial commitment procedures.  Concise Statement of Uncontested Material Facts ("CSF") at 5.   In connection with the commitment, Correctional Officer Knepp followed appropriate protocols by seating Mr. Kulp in front of a commitment computer and asking the required, standard questions and making the required observations.  CSF 6.

There is no evidence that Officer Knepp's questioning of Mr. Kulp revealed a strong likelihood of suicide obvious even to a lay person.  During the suicide risk assessment screening, Mr. Kulp reported, and Officer Knepp recorded, responses to these standard set of questions.  CSF 6.  Mr. Kulp reported that he did not have a psychiatric history, that he did not take psychiatric drugs, that he did not believe that his crime was shocking, that he had never attempted suicide, and that he did not have thoughts of killing himself.  Id.[1] Correctional Officer Knepp also recorded his observations of Mr. Kulp's demeanor, including that Mr. Kulp did not show signs of depression, anxiousness, fear or anger.  Id. At the conclusion of this questioning, the computer would generate a suicide risk assessment score to determine whether suicide watch was required. CSF 7.  The suicide risk assessment in this case did not generate a score that required that Mr. Kulp be placed on suicide watch. CSF 8.  Viewed in their totality, Mr. Kulp's responses to these questions,

---

[1]    Mr. Kulp was diagnosed as being bipolar prior to his commitment to the Centre County Prison. This, however, is far from determinative of whether these defendants should have known of a strong likelihood of suicide.  While a "psychiatric diagnosis identifying suicidal propensities" may impute such knowledge, Colburn, 947 F.2d at 1025 n.1, there is no evidence any diagnosis of suicidal tendencies.  To the contrary, psychologist Quick identified no such tendencies.  CSF 29-32, 34.

coupled with the computer's scoring, demonstrates that no reasonable jury could find that Officer Knepp knew or should have known of a strong likelihood that Mr. Kulp would kill himself.

Further, there is no evidence that Officer Knepp knew that preventative action was necessary, or that he was deliberately indifferent.  The decision as to where an inmate would be housed was to be made by the lieutenant.  CSF 10, 11, 16.  Officer Knepp actually went an extra step and reported to Lt. Veruete that Mr. Kulp seemed upset, and that he wanted to bring this to the lieutenant's attention.  CSF 13.  This cannot constitute deliberate indifference.  Officer Knepp is entitled to summary judgment at this time.

**2.      There is no evidence that Lt. Sonia Veruete either knew or should have known of a strong likelihood of suicide, nor is there evidence that he was deliberately indifferent to a need for preventative action.**

There is no evidence from which a reasonable jury could conclude that Lt. Veruete knew or should have known of some particular vulnerability of Mr. Kulp to suicide.  Lt. Veruete was the supervisor on duty at the time of Mr. Kulp's commitment.  CSF 9.  Lt. Veruete reviewed Mr. Kulp's suicide risk assessment screening, which did not indicate that he was at an imminent risk of suicide.  CSF 10, 8.  Based on Mr. Kulp's responses to the suicide risk assessment screening, she also would have been aware that he had no prior history of suicide attempts or thoughts of killing himself.[2]  CSF 6.

Nor is there any record evidence from which a reasonable jury could conclude that

---

[2]    In fact, the record is devoid of any evidence of prior suicide attempts, much less any that these defendants should have been aware of.  His mother, Carol Kulp, has no knowledge of any prior suicide attempts. CSF 91-92.  In fact, she specifically discussed the subject with her son, who told her he would never do that.  CSF 93. The decedent's father, plaintiff Timothy D. Kulp, is unaware of any earlier suicide attempts. CSF 90.  (There is no evidence, however, that the Centre County Prison defendants were aware of the parent's lack of knowledge or their conversations with their son).  There is simply no prior history of suicide attempts that would have suggested he should have been on suicide watch.

Lt. Veruete was deliberately indifferent to a strong likelihood of suicide.  Lt. Veruete made the decision as to where to house Mr. Kulp. CSF 8, 16.  Three levels of housing were available at that time: general population, administrative segregation, or suicide watch. CSF 15.  The suicide risk assessment screening produced a score that indicated that Mr. Kulp was not to be placed on suicide watch, so she did not. CSF 8, 11.  Nonetheless, she elected to house him in the intermediate level of housing in THU-1, a cell that was only two or three steps from the commitment area, and where Mr. Kulp could be kept under observation. CSF 15 -18.  It was the practice at the Centre County Prison for correctional officers to monitor inmates in THU-1 more closely than those in general population. CSF 15, 69, 75.  Further, Lt. Veruete requested and received further assessment by a mental health professional from Centre County Can Help. CSF 12, 14. Lt. Veruete used the information she had available, and made appropriate efforts to watch Mr. Kulp and place him in touch with mental health personnel.  Under these facts, no reasonable jury could conclude that Lt. Veruete was deliberately indifferent to a strong likelihood of suicide in Mr. Kulp.  She is entitled to summary judgment.

**3.     There is no evidence that Lt. James E. Smith either knew or should have known of a strong likelihood of suicide, nor is there evidence that he was deliberately indifferent to a need for preventative action.**

At the conclusion of discovery, there is no record evidence from which a reasonable jury could conclude that Lt. Smith was deliberately indifferent to a strong risk of suicide.

Lt. Smith was aware that Lt. Veruete had placed plaintiff in the intermediate housing area, specifically cell THU-1. CSF 24.  At the time Lt. Smith was on duty, Mr. Kulp was polite and calm, and was not showing signs of being upset or afraid. CSF 22-23. Lt. Smith saw Mr. Kulp talking about sports with the correctional officers, and asking that the

television be turned on.  CSF 21, 23. There is no evidence of any outward distress.

Lt. Smith was further aware that Psychologist Shannon Quick of Centre County Can Help extensively interviewed Mr. Kulp, that Ms. Quick did not believe that Mr. Kulp was a suicide risk, and that Ms. Quick agreed with the level of housing and scrutiny presently in place. CSF 31, 39-43.  Rather than having knowledge of a strong likelihood of suicide, Lt. Smith knew that Mr. Kulp's interview with a trained suicide risk assessor did not reveal any imminent risk of suicide. CSF 38, 43.  A jury could not hold that it was unreasonable for Lt. Smith to have relied on the expertise of Ms. Quick.

Nor can it be said that Lt. Smith acted with any deliberate indifference to a strong risk of suicide in Mr. Kulp.  Lt. Smith followed the recommendations of mental health professional Quick. CSF 43-44.  Lt. Smith continued to follow Ms. Quick's recommendation to house Mr. Kulp in THU-1, and relayed that to the lieutenant relieving him. CSF 44, 45. Further, during the course of his shift, a request was made for counseling for Mr. Kulp with Mr. Gallu. CSF 47.

Most significantly, there is no causal connection between Lt. Smith's actions and Mr. Kulp's commission of suicide.  Mr. Kulp did not commit suicide during Lt. Smith's shift, CSF 86, nor did Lt. Smith do anything to alter the level of scrutiny previously established or to place Mr. Kulp at any greater risk. CSF 45.  Lt. Smith is entitled to summary judgment.

**4.     There is no evidence that Correctional Officers McClellan, Andrews, Shearer, Gates or Stefanko either knew or should have known of a strong likelihood of suicide, nor is there evidence that they were deliberately indifferent to a need for preventative action.**

Similarly, correctional officers McClellan, Andrews, Shearer, Gates, and Stefanko are entitled to summary judgment.  On the evening of August 27, 2001, Mr. Kulp was

watching television, joking with the guards, and was not acting unusual.  CSF 71-72. There is no evidence of any complaints or threats being made by Mr. Kulp to these correctional officers that he intended to commit suicide.  There are simply no facts from which a reasonable jury could conclude that these correctional officers knew or should have known of a strong likelihood of suicide.

Nor is there any evidence that these correctional officers were deliberately indifferent to a need for preventative action. These officers knew that they were to keep an eye on Mr. Kulp. CSF 69, 75. These correctional officers did so, and checked on Mr. Kulp at 10:38 p.m., at which time he was sitting on his bed and watching television without incident. CSF 73.  Officer Andrews was only a short distance away in the commitment area at 10:59 p.m. CSF 76. At 11:06, only 28 minutes since the last check, Officer McClellan noticed that he did not see Mr. Kulp on his bed, so he checked on him again, found he had hung himself but was still alive, and immediately began resuscitative efforts. CSF 79-83. Unfortunately, Mr. Kulp's suicide attempt was successful.

Significantly, Correctional Officers Shearer and Andrews were not even present or on shift when Mr. Kulp's attempt was discovered. CSF 77-78.  Similarly, Officer Gates had only been on duty for a matter of minutes, and had no interactions with Mr. Kulp before his attempt was discovered. CSF 84, 74.  On the record established, plaintiffs cannot prove these defendant officers were deliberately indifferent.  They are entitled to summary judgment.

C.   **THERE IS NO EVIDENCE TO SUPPORT PLAINTIFFS' PUNITIVE DAMAGE CLAIMS AGAINST THESE DEFENDANTS.**

Because the Court granted the moving defendants' motion to dismiss, the issue of punitive damages was never reached.   Out of an abundance of caution, it will be addressed herein.   The moving defendants are sued in both their official and individual capacities.   Punitive damages are not available against officials sued in their official capacities, as those claims are identical to claims against the municipality itself.   Carroll v. Bristol Township, 827 F.Supp. 332, 335 (E.D. Pa. 1993).   Punitive damage claims against a municipality are barred as against public policy.   City of Newport v. Fact Concerts, Inc., 453 U.S. 247, 271 (1981). Therefore, the punitive damages claims against defendant officers in their official capacity should be dismissed.

The punitive damages claims against these defendants in their individual capacities must also be dismissed because there are no facts alleged to support that these defendants acted with evil motive or reckless or careless indifference to the plaintiff.   In a Section 1983 civil action:

> A jury may be permitted to assess punitive damages . . . when
> the defendant's conduct is shown to be motivated by evil
> motive or intent, or it involves reckless or careless indifference
> to the federally protected rights of others.

Feldman v. Philadelphia Housing Authority, 43 F.3d 823, 833 (3d Cir. 1994); Smith v. Wade, 461 U.S. 30, 56, 103 S.Ct. 1625, 1640, 75 L.Ed.2d 632 (1983). See also Gonzalez v. Romanisko, 744 F.Supp. 95, aff'd. 941 F.2d 1201 (M.D. Pa. 1990) (holding that plaintiffs were not entitled to punitive damages as there was no evidence the police conduct was motivated by evil motive or intent or reckless indifference to their rights).

The facts of record have already been discussed at length above and need not be

restated here.   These facts are not even close to being sufficient to impose punitive

damages on these defendants.  Accordingly, plaintiffs' claims for punitive damages against

these defendants should be dismissed.

## CONCLUSION

Plaintiffs have now been afforded a full opportunity to conduct discovery as required

by the Third Circuit.   At the close of discovery, the plaintiffs still have no evidence to

support a claim against these defendants.   The entry of summary judgment at this time is

proper.  For the foregoing reasons, the defendants,  SONIA M. VERUETE,  JAMES E.

SMITH, CORRECTIONAL OFFICERS SCOTT L. STEFANKO, DAVID C. KNEPP,

WILMER S. ANDREWS, JR., ERIC R. GATES, and MICHAEL SHEARER respectfully

request that this Honorable Court to grant their Motion for Summary Judgment and dismiss

plaintiffs' claims with prejudice.


**JURY TRIAL DEMANDED**

Respectfully submitted,

MEYER, DARRAGH, BUCKLER,
BEBENEK & ECK, P.L.L.C.

BY:   _s/Marie Milie Jones_____
MARIE MILIE JONES, Esquire
PA I.D. #49711

U.S. Steel Tower, Suite 4850
600 Grant Street
Pittsburgh, PA  15219
(412) 261-6600 (Phone)
(412) 471-2754 (Fax)
E-Mail:  mjones@mdbbe.com

Counsel for Defendants,
SONIA M. VERUETE, LIEUTENANT JAMES E.
SMITH, CORRECTIONAL OFFICERS SCOTT
L. STEFANKO, DAVID C. KNEPP, TERRY L.
McCLELLAN, WILMER S. ANDREWS, JR.,
ERIC R. GATES and MICHAEL SHEARER

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the within **BRIEF IN SUPPORT**

**OF MOTION FOR SUMMARY JUDGMENT** has been served upon all parties either

individually or through counsel by:

| | |
|---|---|
| _____ | Hand-Delivery |
| _____ | First-Class Mail, Postage Prepaid, or E-Mail |
| _____ | Certified Mail-Return Receipt Requested |
| _____ | Facsimile |
| _____ | Federal Express |
| √ | Electronic Service |

at the following addresses:

Jeffrey C. Dohrmann, Esquire
Rieders Travis Humphrey Harris Waters &
    Waffenschmidt
161 West Third Street
Williamsport, PA  17701
*(Counsel for Plaintiffs)*

Kenneth S. Fair, Esquire
NAULTY, SCARICAMAZZA & McDEVITT, LLC
1617 JFK Boulevard, Suite 1600
Philadelphia, PA 19103
*(Counsel for Shannon Quick)*

Stuart L. Hall, Esquire
Snowiss, Steinberg, Faulkner & Hall, LLP
333 North Vesper Street
P.O. Box 5
Lock Haven, PA  17745
*(Counsel for Timothy Gallu)*

Date:   August 31, 2006

*s/Marie Milie Jones*
MARIE MILIE JONES, Esquire

Counsel for Defendants,
SONIA M. VERUETE, LIEUTENANT
JAMES E. SMITH, CORRECTIONAL
OFFICERS SCOTT L. STEFANKO, DAVID
C. KNEPP, TERRY L. McCLELLAN,
WILMER S. ANDREWS, JR., ERIC R.
GATES and MICHAEL SHEARER

P0785892.1